# UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF VIRGINIA
## LYNCHBURG DIVISION

| | |
|---|---|
| **In Re: DELGARDO LEE LINTHICUM** ) | **Chapter 7** |
| ) | **Case No. 08-60155** |
| **Debtor** ) | |
| ) | |
| ) | |
| **BRANCH BANKING & TRUST COMPANY** ) | |
| ) | |
| **Plaintiff** ) | |
| ) | |
| **v.** ) | **Adversary Proceeding** |
| ) | **No.**_____ |
| **DELGARDO LEE LINTHICUM** ) | |
| ) | |
| **Defendant** ) | |
| ) | |

## COMPLAINT TO DETERMINE
## DISCHARGEABILITY OF DEBT AND FOR OTHER RELIEF

Branch Banking & Trust Company (the "Bank"), by counsel, states as follows for its Complaint to Determine Dischargeability of Debt and for Other Relief against Delgardo Lee Linthicum (the "Debtor").

### Parties and Jurisdiction

1.  On January 25, 2008 (the "Petition Date"), the Debtor filed a petition for relief pursuant to Chapter 7 of the Bankruptcy Code, 11 U.S.C. §101, et seq. in the United States Bankruptcy Court for the Western District of Virginia, Lynchburg Division.

2.  The Bank is a North Carolina banking corporation that conducts business in the Commonwealth of Virginia.

3.  This Complaint is filed pursuant to 11 U.S.C. § 523(a)(2) and (6), 11 U.S.C. § 523(c),

and Bankruptcy Rule 7001(6), and it requests a determination that a debt owed by the Debtor to the Bank is nondischargeable as well as judgment against the Debtor on account of that debt.

4.  The claims set forth in this Complaint arise under or are related to a case under Title 11, and the Court possesses subject matter and personal jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A),(B),(I) and (O).

### Factual Allegations

5.  At all relevant times, the Debtor was an officer and/or director of Kingdom Ministries, Inc., a Virginia non-stock corporation ("Kingdom") that operated, among other things, an over-the-road trucking business.

6.  On behalf of Kingdom, the Debtor applied for a loan from Bank in July, 2007. The Debtor represented that the loan would be used to refinance debt secured by vehicles owned by Kingdom.

7.  As a condition of the loan, the Debtor was required to execute a personal guaranty of repayment of the obligations of Kingdom to the Bank, and, in connection with the loan application, the Debtor provided a personal financial statement dated July 6, 2007, a copy of which is attached as **Exhibit A** (the "Financial Statement").

8.  Based upon the Debtor's guaranty and his Financial Statement, the Bank loaned the sum of $136,000.00 to Kingdom as evidenced by promissory note dated August 2, 2007, (the "Note"), a copy of which is attached as **Exhibit B**.

9.  By security agreement dated August 2, 2007 (the "Security Agreement"), a copy of which is attached as **Exhibit C**, Kingdom gave the Bank a security interest in vehicles listed therein

(the "Vehicles").

10. The Debtor guaranteed all indebtedness, obligations and liabilities of Kingdom then existing or which subsequently arose to the Bank pursuant to a Guaranty Agreement dated August 2, 2007 (the "Guaranty"), a copy of which is attached as **Exhibit D**. The indebtedness guaranteed by the Debtor included, but was not limited to, the debt evidenced by the Note.

11. The Debtor has refused and failed to provide and continues to refuse and fail to provide the original titles for the Vehicles to the Bank.

12. At the meeting of creditors in this case, the Debtor testified under oath that he had sold certain of the Vehicles listed on the Security Agreement and used the proceeds for purposes other than payment of the debt to the Bank. The Debtor also testified that he transferred one of the Vehicles, a 2002 BMW 745i, to his wife in 2007, apparently for no consideration.

13. The Debtor controlled Kingdom, and he knew and understood that he and Kingdom were required to remit the proceeds of the sale of the Vehicles to the Bank.

14. In the Financial Statement, the Debtor made the following material misrepresentations regarding his financial condition with the intent to deceive, and the Bank reasonably relied upon such statements:

    (a) The Debtor represented that, as of July 6, 2007, he owned Best Buy stock with a market value of $82,000.00 and Wal-Mart stock with a market value of $150,000.00. At his 341 meeting, the Debtor testified that he had owned only about $10,000.00 to $15,000.00 worth of stock, and that he liquidated all such stock prior to his completion of the Financial Statement.

    (b)  The Debtor represented he owned solely, and not with his wife, a three-bedroom house located at 299 Acorn Drive in Rustburg, Virginia, having a market value of $350,000.00 and securing a debt of $280,000.00. In his bankruptcy schedules, the Debtor revealed that he actually owns the home with his wife as tenants by the entirety and that its market value is only $290,000.00. Further, at his 341 meeting, the Debtor testified that nothing had happened to cause a decrease in the value of the home between the date he prepared the Financial Statement and the Petition Date.

    (c)  In the Financial Statement, the Debtor was asked "Have you ever declared bankruptcy or had any judgments recorded against you?" The Debtor answered "No." On his bankruptcy petition and at the 341 meeting, the Debtor admitted he filed two prior bankruptcies, one in 1986 and one in 1997.

15.  In the Financial Statement, the Debtor acknowledged and agreed that the information contained in that statement was provided to induce the Bank to extend or to continue to extend credit to Kingdom or others pursuant to his Guaranty.

16.  As of the April 22, 2008, the unpaid principal balance of the indebtedness of Kingdom guaranteed by the Debtor was $130,314.28, plus accrued and unpaid interest of $6,616.22, and late fees of $661.02. Interest continues to accrue on the unpaid balance at a default rate of the Bank's Prime rate, plus 5% per annum until paid, and Kingdom and the Debtor are also contractually responsible for the Bank's costs of collection, including reasonable attorney's fees.

**Count I**

17.     The allegations of paragraphs 1 through 16 are re-alleged and restated as if set forth in full herein.

18.     The Debtor incurred a debt to the Bank for money or an extension, renewal or refinancing of credit which he obtained by false pretenses, false representations or actual fraud, including the use of a statement in writing that was materially false respecting his financial condition, upon which the Bank reasonably relied, and that the Debtor caused to be made or published with the intent to deceive.

WHEREFORE, the Bank requests that this Court determine the obligations of the Debtor to the Bank to be non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) and (B), that judgment be entered against the Debtor in the principal amount of $130,314.28, plus accrued and unpaid interest of $6,616.22, and late fees of $661.02, plus interest on the unpaid balance at the default rate equal to the Bank's Prime rate plus 5% per annum until paid, together with all costs of collection, including reasonable attorney's fees, and that the Bank have such other and further relief as is just and proper.

**Count II**

19.     The allegations of paragraphs 1 through 16 are re-alleged and restated as if set forth in full herein.

20.     Prior to the Petition Date and while in control of Kingdom, the Debtor deliberately and intentionally sold and/or disposed of some of the Vehicles without the knowledge, agreement or consent of the Bank in knowing disregard of the Bank's rights in such Vehicles. Additionally, the Debtor has neither given a proper accounting for the proceeds of the sale of such collateral nor paid

the proceeds to the Bank.

21. The Debtor has failed and refused, and continues to fail and refuse, to surrender the titles to the vehicles of Kingdom which serve as collateral for Kingdom's indebtedness to the Bank, thereby impairing the Bank's ability to liquidate its collateral.

22. The Debtor acted willfully and with actual intent, objective or subjective, to injure the Bank and its property rights in the Vehicles, and the Debtor acted with malice.

23. The Debtor's disposal of the Bank's collateral, and his failure to surrender the titles, constitutes willful, wanton, and intentional interference by the Debtor in and to the Bank's right in and to the collateral, and the Debtor's debt to the Plaintiff is non-dischargeable as a tortuous conversion pursuant to 11 U.S.C. § 523(a)(6).

WHEREFORE, the Bank requests that this Court determine the obligations of the Debtor to the Bank to be non-dischargeable pursuant to 11 U.S.C. § 523(a)(6), that judgment be entered against the Debtor in the principal amount of $130,314.28, plus accrued and unpaid interest of $6,616.22, and late fees of $661.02, plus interest on the unpaid balance at the default rate equal to the Bank's Prime rate plus 5% per annum until paid, together with all costs of collection, including reasonable attorney's fees, and that the Bank have such other and further relief as is just and proper.

                                                     BRANCH BANKING & TRUST COMPANY

                                                     By: /s/ Paul M. Black
                                                               Counsel

Paul M. Black (VSB No. 24861)
Spilman Thomas & Battle, PLLC
P. O. Box 90
Roanoke, VA  24002
Telephone:   (540) 512-1800
Facsimile:   (540) 342-4480
pblack@spilmanlaw.com
718151 – 14032.354